# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANNIE LU KIRSCHENBAUM | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 08-4569 |
| | * | |
| CARY L. SPRAGGINS ET AL. | * | SECTION "L"(4) |

## ORDER & REASONS

Before the Court are a Motion for Summary Judgement filed by Third-Party Plaintiff TGW-Ermanco, Inc. ("TGW-Ermanco") (Rec. Doc. No. 213), a Motion for Summary Judgment filed by Third-Party Defendant Paragon Technologies, Inc. ("Paragon") (Rec. Doc. No. 204), a Motion for Summary Judgment filed by Third-Party Defendant St. Paul Fire and Marine Insurance Co. ("St. Paul") (Rec. Doc. No. 205), and a Motion to Bifurcate Trial filed by St. Paul (Rec. Doc. No. 206). The Court, having heard the parties' oral arguments and reviewed the submitted memoranda and applicable law, is ready to rule. For the following reasons, TGW-Ermanco's Motion for Summary Judgment – which reaches only the issue of liability with respect to its claim against Paragon –  is **GRANTED**; Paragon's Motion for Summary Judgment is **DENIED**; St. Paul's Motion for Summary Judgment is **DENIED**; and St. Paul's Motion to Bifurcate Trial is **DENIED AS MOOT**. In addition, the Court concludes *sua sponte* that summary judgment is to be **GRANTED** in favor of TGW-Ermanco on the issue of liability with respect to its claim against St. Paul. The Court does not address the amount to which TGW-Ermanco is entitled to receive because none of the parties discussed that issue in their motions.

## I.  BACKGROUND

This case arises out of injuries that occurred on October 5, 2007 while Annie Lu

1

Kirschenbaum was employed with Neill Corp. On that day, Ms. Kirschenbaum reached for an item that had fallen underneath a conveyor line, and her hair got caught in the conveyor equipment. As a result, she sustained severe and permanent injuries. The conveyor equipment at issue was originally designed and manufactured by Ermanco, Inc., then a subsidiary of Paragon. It was subsequently acquired by Brandt & Hill, which, in 1994, sold and installed it at Neill Corp.'s facilities. In 2007, Streamline Integrated Technologies, Inc. redesigned and reinstalled the equipment at a new Neill Corp. facility.

Two years before Ms. Kirschenbaum was injured -- in 2005 -- TGW-Ermanco, which was then known as Malibu Acquisition, Inc., entered into an Asset Purchase Agreement ("APA") with Ermanco, Inc. and its parent company Paragon. Pursuant to the APA, TGW-Ermanco acquired "substantially all of the assets and properties held in connection with" Ermanco's business – the design, manufacture, sale, and distribution of conveyor systems and related products. APA at 1 (Rec. Doc. No. 213-4 at 6). As partial consideration for these assets, TGW-Ermanco agreed to assume a limited set of Ermanco, Inc.'s obligations and liabilities, which are referred to in the APA as the "Assumed Liabilities." *Id.* § 1.2(c) (Rec. Doc. No. 213-4 at 7). The APA provided that "[e]xcept for the Assumed Liabilities," TGW-Ermanco was not to "become liable for any obligations, commitments or liabilities of [Ermanco]," including those that would be "imposed upon [TGW-Ermanco] as a successor under applicable [law]." *Id.*

The APA imposes indemnification obligations on both sides of the transaction. Section 7.1 of the APA provides that Paragon "will indemnify and hold harmless [TGW-Ermanco] for all Adverse Consequences arising from or related to . . . (b) any Excluded Liability; . . . (d) [Ermanco's] ownership or use of the Purchased Assets or operation of the Business on or before

2

the Closing Date . . . ; and (e) the enforcement of indemnification rights under this Article ." *Id.* §
7.1 (Rec. Doc. No. 213-4 at 35-36). In turn, Section 7.2 of the APA provides that TGW-Ermanco
"will indemnify and hold harmless [Paragon] for all Adverse Consequences arising from or
related to . . . (b) any Assumed Liability; . . . (c) [TGW-Ermanco's] ownership or use of the
Purchased Assets or operation of the Business following the Closing Date . . . ; and (d) the
enforcement of indemnification rights under this Article." *Id.* § 7.2 (Rec. Doc. No. 213-4 at 36).

In October 2008, Ms. Kirschenbaum filed suit against TGW-Ermanco and a number of
other defendants, seeking to recover damages for the injuries she sustained. With respect to
TGW-Ermanco, she asserted a claim under the Louisiana Products Liability Act, alleging design
and warning defects. In December 2008, TGW-Ermanco invoked the indemnification provision
in the APA, gave notice of Ms. Kirschenbaum's claim to Paragon, and tendered its defense to
Paragon. TGW-Ermanco also requested indemnification from Paragon's insurer, St. Paul Fire &
Marine Insurance Co. After Paragon and St. Paul each rejected the demands, TGW-Ermanco
initiated third-party claims against them.

In June 2010, the Court granted the motions for summary judgment filed by
TGW-Ermanco and Brandt & Hill with respect to Ms. Kirschebaum's claims against them. *See*
*Kirschenbaum v. Spraggins*, No. 08-4569, 2010 WL 2291455, at *4 (E.D. La. 2010). The Court
held that there was no genuine issue of material fact as to whether the conveyer equipment was
properly manufactured and contained adequate warnings. *See id.* at *3-*4. The Court thus
dismissed with prejudice Ms. Kirschenbaum's claims against TGW-Ermanco and Brandt & Hill.
*Id.* at *4.  In August 2010, Ms. Kirschenbaum entered into a settlement agreement with the

remaining defendants, and the Court dismissed all of Ms. Kirschenbaum's remaining claims.[1]

The remaining claims in this matter are Third-Party Plaintiff TGW-Ermanco's claims against

Third-Party Defendants Paragon and St. Paul.

## II. PRESENT MOTIONS

TGW-Ermanco and Paragon have filed cross-motions for summary judgment on

TGW-Ermanco's claim that Paragon owes indemnification to it.

In its motion for summary judgment and in its opposition to Paragon's cross-motion,

TGW-Ermanco asserts that the language of Section 7.1 – the APA provision that sets forth

Paragon's indemnification obligation – is all-inclusive and that it encompasses the expenses of

defending any claim that arises from1) the operation of the conveyor equipment business before

it was acquired by TGW-Ermanco and 2) any obligation and liability of Ermanco, Inc. that

TGW-Ermanco did not expressly assume under the APA. TGW-Ermanco argues that the

Kirschenbaum claim clearly falls within the ambit of Section 7.1.

In its opposition to TGW-Ermanco's motion and in its own motion for summary

judgment, Paragon's principal argument is that Ms. Kirschenbaum sought recovery for

TGW-Ermanc's conduct after TGW-Ermanco acquired the conveyor equipment business.

Paragon contends that as a result, Ms. Kirschebaum's claim does not fall within Section 7.1 of

the APA. Paragon also asserts that Paragon owes no duty to indemnify TGW-Ermanco because

Ms. Kirschenbaum alleged TGW-Ermanco's own negligence and because Section 7.1 does not

---

[1] Travelers Indemnity Company of Company, which provided workers' compensation coverage to Neill Corp., had intervened as a plaintiff in this case, seeking reimbursement for the workers' compensation it paid under the Louisiana Workers' Compensation Act. After Ms. Kirschenbaum settled her claims, the Court granted Travelers's motion to dismiss all of its claims in this matter.

expressly provide for the indemnification of TGW-Ermanco's own misconduct.

St. Paul – Paragon's insurer – has filed a motion for summary judgment on TGW-Ermanco's claim against it. Beyond echoing the argument that Paragon has no duty to indemnify TGW-Ermanco, St. Paul asserts that TGW-Ermanco has no standing to pursue a claim against it because TGW-Ermanco is not a party to the insurance policy issued by St. Paul to Paragon.

TGW-Ermanco and Paragon have both filed oppositions to St. Paul's motion. TGW-Ermanco points to language in the policy indicating that St. Paul has agreed to pay an indemnitee's defense expenses. Paragon seconds this argument, noting that if Paragon were to be held liable for indemnification, then St. Paul has a duty to pay under the insurance policy.

## III.  LAW AND ANALYSIS

### A. Standard of Review

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs.,*

*Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24; Fed. R. Civ. P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

## B. TGW-Ermanco's Claim for Indemnification Against Paragon

In its Third-Party Complaint, TGW-Ermanco alleges that pursuant to Section 7.1 of the APA, Paragon must indemnify it for the expenses it incurred as a result of defending the Kirschenbaum claim. Third-Party Compl. para. 16 (Rec. Doc. No. 44). TGW-Ermanco and Paragon have filed cross-motions for summary judgment with respect to this claim. The first question is what law is to be applied in resolving this contractual dispute. The second question is whether TGW-Ermanco's claim has merits.

### 1. The choice of law

A federal court sitting in diversity must apply the conflict-of-law rules of the forum state. *Roberts v. Energy Develop't Corp.*, 104 F.3d 782, 786 (5th Cir. 1997). The Louisiana Civil Code provides that as a general matter, "cases having contacts with other states are governed by the law selected in accordance with [the choice of law provisions] of this Code." La. Civ. Code art. 14. The Code, in turn, specifies choice-of-law rules for cases arising out of contracts. Article

3540 of the Code states that in general, "issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." *Id.* art. 3540. Article 3537, in turn, states that "an issue of conventional obligation is governed by the law of the state whose policies would be the most seriously impaired if its law were not applied to that issue." *Id.* art. 3537. A number of factors are relevant in determining the state whose policies would be impaired. *See id.*[2]

Here, the parties to the APA have chosen Michigan law as the law pursuant to which the APA is to be construed and applied. *See* APA § 9.5 (Rec. Doc No. 213-4 at 50). Michigan also appears to be the state whose laws would otherwise apply. Indeed, both the seller, Ermanco Inc., and the buyer, then-known as Malibu Acquisition (now known as TGW-Ermanco), are Michigan corporations, *see id.* at 1 (Rec. Doc. No. 213-4 at 6), and the closing was to take place in Michigan, *see id.* § 1.5 (Rec. Doc. No. 213-4 at 8). Thus, while the parent companies of the buyer and seller are Austrian and Delaware corporations, respectively, *see id.* at 1 (Rec. Doc. No. 213-4 at 6), it appears that Michigan has the strongest relationship to the APA. Because Michigan law is both the parties' choice of law, which is to be respected under Article 3540, and

---

[2] Article 3537 provides that the following are relevant in determining the state whose policies would be most seriously impaired: "(1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other." La. Civ. Code art. 3537. The policies referred to in Article 3515 are "the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." *Id.* art. 3515.

the law that would otherwise be applicable under Article 3537, it is the law that this Court is to apply in this case.

### 2. The rules of contract interpretation

Under Michigan law, "[a]n indemnity contract is construed in the same manner as other contracts." *DaimlerChrysler Corp. v. G Tech Prof'l Staffing, Inc.*, 678 N.W.2d 647, 649 (Mich. Ct. App. 2003). Thus, in interpreting an indemnity contract, the court's "obligation is to determine the intent of the parties." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003). To do so, the court looks to the language of the contract itself, *Mich. Chandelier Co. v. Morse*, 297 N.W. 64, 67 (Mich. 1941), for "the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest," *id.* (internal quotation marks and citation omitted).

In surveying the language, the court must consider the "plain and ordinary meaning" of the words, as well as the meaning that the parties have "specifically assign[ed]" to certain words. *DaimlerChrysler Corp.*, 678 N.W.2d at 649. In addition, the court must examine the rest of the contract to interpret the provision at issue: "[t]he meaning of any particular part of an instrument can only be found by an examination of the whole." *Staebler-Kempf Oil Co. v. Mac's Auto Mart, Inc.*, 45 N.W.2d 316, 356 (Mich. 1951); *accord Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992) (noting that a "court must look to the contract as a whole"); *Fresard v. Mich. Millers Mut. Ins. Co.*, 327 N.W.2d 286, 289 (Mich. 1982) (noting that this is a principle "so rudimentary as to be axiomatic").

If, in light of the language and of the contract as a whole, the relevant provision "fairly admits of but one interpretation," then the provision is deemed to be unambiguous, *Raska v.*

8

*Farm Bureau Mut. Ins. Co. of Mich.*, 314 N.W.2d 440, 441 (Mich. 1982), and must be enforced as such, *see Quality Prods.*, 666 N.W.2d at 259 ("If the language of the contract is unambiguous, [the court is to] construe and enforce the contract as written."). Indeed, "an unambiguous contractual provision is reflective of the parties' intent as a matter of law." *Id.* If, however, the contract is ambiguous, and thus requires consideration of "'extrinsic facts in connection with what it is written,'" *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003) (quoting *O'Connor v. March Automatic Irrigation Co.*, 218 N.W. 784, 787 (Mich. 1928)), then its meaning is "a question of fact that must be decided by the jury," *id.* at 453-54.

### 3. The scope of the indemnity provision in Section 7.1 of the APA

The question raised by TGW-Ermanco's claim against Paragon is whether Section 7.1 of the APA requires Paragon to indemnify TGW-Ermanco for the expenses it incurred in defending the Kirschenbaum claim. As noted above, Section 7.1 of the APA provides in relevant part that "Seller [i.e. Ermanco, Inc.] and Seller Parent [i.e. Paragon] . . . will indemnify and hold harmless Buyer [i.e. now TGW-Ermanco] . . . and will reimburse Buyer . . . for all Adverse Consequences arising from . . . (b) any Excluded Liability; . . . [and] (d) Seller's [i.e. Ermanco's] operation of the Business on or before the Closing Date." APA § 7.1 (Rec. Doc. No. 213-4 at 35-36).

There is no doubt that the attorney's fees and costs that a party incurs as a result of defending a claim in court are "Adverse Consequences" within the meaning of Section 7.1. The APA broadly defines the term "Adverse Consequences" as "any loss, cost, liability, penalty, Tax, claim, damage, expense (including costs of investigation, defense, settlement and reasonable attorneys' and other professional fees), remedial action or diminution of value." *Id.* art. 8 (Rec. Doc. No. 213-4 at 40). Thus, the key question is whether Ms. Kirschenbaum's claim relates to an

"Excluded Liability" or arises from Ermanco's "operation of the Business before the Closing Date."

To answer this question, we must first understand the nature of Ms. Kirschenbaum's claim. In her Complaint, Ms. Kirschenbaum alleged that the conveyor equipment that caused her injuries was not "equipped with a line shaft guard," Pl.'s Compl. para. 28 (Rec. Doc. No. 1), and that this "rendered the equipment unreasonably dangerous," *id.* para. 29. Ms. Kirschenbaum also alleged a "[f]ailure to instruct . . . that the equipment needed a line shaft guard." *Id.* para. 32(f). Ms. Kirschenbaum thus raised both a design-defect allegation and a warning-defect allegation under the Louisiana Products Liability Act (LPLA), which provides the "exclusive theories of [product] liability" under Louisiana law, La. Rev. Stat. Ann. § 9:2800.52.[3]

The design-defect allegation clearly relates back to Ermanco. The parties do not dispute that the conveyor equipment that caused Ms. Kirschenbaum's injuries was manufactured by Ermanco during or before 1994. This was before 2005, the year during which TGW-Ermanco acquired the conveyor equipment business from Ermanco. Thus, to the extent that Ms. Kirschenbaum sought to hold TGW-Ermanco liable for the design defect, she was seeking to do so on the theory that TGW-Ermanco is the successor corporation to Ermanco and thus liable for the tort of its predecessor. *See generally, e.g.*, *Bourque v. Lehmann Lathe, Inc., Div. of Smith*

---

[3] At oral argument, Paragon sought to draw attention to the broad allegation that Ermanco and other defendants should be held liable for "all other acts of negligence, strict liability, fault and/or omissions which may be proven at trial." Pl.'s Compl. para. 32(h) (Rec. Doc. No. 1). Given that the LPLA provides the exclusive theories of liability under Louisiana law, however, Paragon's attempt to inject significance into that statement is implausible. As reflected in this Court's decision to grant summary judgment in favor of TGW-Ermanco with respect to Ms. Kirschenbaum's claims, the parties in this matter have understood that Ms. Kirschenbaum was raising claims only under the LPLA. *See Kirschenbaum*, 2010 WL 2291455, at *3-*4.

*Int'l, Inc.*, 476 So.2d 1125, 1127-28 (La. Ct. App. 1985) (explaining successor liability).

The warning-defect allegation is more complex, but it also relates back to Ermanco. Indeed, Louisiana law recognizes a continuing duty to warn, and it imposes this duty, in the first instance, on the manufacturer of the equipment: the LPLA provides that it is "[the] manufacturer of a product who acquires knowledge of a characteristic of the product that may cause damage" who is to be held "liable for damage caused his subsequent failure . . . to provide an adequate warning." La. Rev. Stat. Ann. § 9:2800.57(C); *see also Marks v. OHMEDA, Inc.*, 871 So.2d 1148, 1155 (La. Ct. App. 2004) (noting that the duty to warn is "placed directly upon the manufacturer [and] cannot be delegated").

Thus, to the extent that Ms. Kirschenbaum was alleging a breach the duty to warn from the time the conveyor equipment was sold to Brandt & Hill up until November 30, 2006 -- the date on which Ermanco, Inc. dissolved[4] -- she was alleging fault on the part of Ermanco and, in seeking to obtain recovery from TGW-Ermanco, was relying on a theory of successor liability. Similarly, to the extent that Ms. Kirschenbaum was alleging a breach of the duty to warn from November 30, 2006 to October 5, 2007 -- the date on which she sustained her injuries -- she was doing so on the theory that TGW-Ermanco is the successor corporation to Ermanco and that as a result, it has inherited Ermanco's duty to warn with respect to all of the products that Ermanco had designed and manufactured. In sum, Ms. Kirschenbaum's claim relates back to the design

---

[4] "Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports" under Federal Rule of Evidence 201. *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981). The Court takes judicial notice of the fact that as indicated in the records of the Michigan Department of Energy, Labor and Economic Growth, Ermanco, Inc. was dissolved on November 30, 2006. *See* Mich. Dep't of Energy, Labor & Econ. Growth, Corporate Entity Details, http://www.dleg.state.mi.us/bcs_corp/dt_corp.asp?id_nbr=110975.

and manufacture of the equipment by Ermanco prior to TGW-Ermanco's acquisition of the conveyor business equipment, and her claim is, in all respects, premised on the theory that TGW-Ermanco is the successor corporation to Ermanco.

In light of this, it is obvious that Ms. Kirschenbaum's claim falls within the ambit of Section 7.1 of the APA, the indemnification provision invoked by TGW-Ermanco. First, Ms. Kirschenbaum's claim clearly arises from Ermanco's "operation of the Business before the Closing Date." The APA defines the term "Business" as the "design[], manufacture[], s[ale] and distribut[ion] [of] conveyors, conveyor systems and related products." APA at 1 (Rec. Doc. No. 213-4 at 6). Moreover, the parties do not dispute that the Closing Date occurred in 2005 -- that is, after Ermanco had manufactured and sold the conveyor equipment that eventually injured Ms. Kirschenbaum.

Second, Ms. Kirschenbaum's claim also arises from "Excluded Liabilities" under the APA. As defined by the agreement, the term "Excluded Liabilities" denotes those "obligations and liabilities" of Ermanco that TGW-Ermanco did not expressly agree to assume, including those that would be "imposed upon [TGW-Ermanco] as a successor under applicable [law]." *Id.* § 1.2(c) (Rec. Doc. No. 213-4 at 7). In the APA, TGW-Ermanco agreed to assume only a limited set of Ermanco's obligations and liabilities -- namely, certain current balance sheet liabilities and certain executory obligations arising under various Ermanco contracts. *See id.* art. 8 (Rec. Doc. No. 213-4 at 40); *see also id.* ex. 8.2 (Rec. Doc. No. 213-4 at 58). TGW-Ermanco did not agree to assume the duties and liabilities in tort of Ermanco, and as such, Ms. Kirschenbaum's claim clearly concerns an "Excluded Liability" as contemplated by the APA.

In sum, Ms. Kirschenbaum's claim falls within the unambiguous language of Section 7.1

of the APA. The expenses associated with the defense of a claim that concerns conveyor equipment that Ermanco designed and manufactured in or before 1994 and that injured Ms. Kirschenbaum in 2007 are "Adverse Consequences . . . arising from. . . [Ermanco's] operation of the business . . . before the Closing Date." They are also "Adverse Consequences . . . arising from . . . [an] Excluded Liability" as that term is defined by the APA. Paragon is thus liable to TGW-Ermanco for the expenses it incurred in defending the Kirschenbaum claim. In addition, because the indemnification provision requires Paragon to indemnify TGW-Ermanco for "Adverse Consequences . . . arising from . . . the enforcement of indemnification rights" under Section 7.1, Paragon is also liable to TGW-Ermanco for the expenses it incurred in this third-party action.

Paragon resists this conclusion by raising three arguments, but none are persuasive. First, Paragon contends that the Court's grant of summary judgment to TGW-Ermanco with respect to Ms. Kirschenbaum's claim absolves it of any duty to indemnify. To support this proposition, however, Paragon cites only to cases in which Louisiana law was applied. As noted above, the instant matter is governed by Michigan law, and the language of Section 7.1 provides for indemnification without regard to whether the indemnitee prevails on a claim. Additional research does not reveal cases indicating that Michigan law provides a rule of construction under which such plain language is to be overridden to make indemnification unavailable whenever the indemnitee prevails on a claim.

Second, Paragon argues that TGW-Ermanco's claim for indemnification sweeps too broadly and that to the extent that Ms. Kirschenbaum was alleging a breach on the part of TGW-Ermanco of a continuing duty to warn, it is under no obligation to indemnify

13

TGW-Ermanco. Paragon points to Section 7.2 of the APA and asserts that such a claim is

"related to . . . [TGW-Ermanco's] . . . operation of the Business following the Closing Date"

within the meaning of that section -- and thus a claim with respect to which Paragon owes no

indemnification. APA § 7.2 (Rec. Doc. No. 213-4 at 36).

At first blush, this argument does seem have some force. Indeed, if TGW-Ermanco was

in breach of a continuing duty to warn from November 30, 2006 to October 5, 2007, that breach

was clearly "related to" its own "operation" of the conveyor equipment business and thus

arguably within the language of Section 7.2. As the Michigan Supreme Court has cautioned,

however, "contracts are to be construed in their entirety." *Perry v. Seid*, 611 N.W.2d 516, 520

(Mich. 2000). And once we "look at the contract as a whole," *Churchman*, 489 N.W.2d at 434, it

becomes evident that Paragon's argument is untenable.

The overarching purpose of the APA is to set forth the terms for TGW-Ermanco's

acquisition of "substantially all of the assets and properties held in connection with" Ermanco's

"Business" -- the design, manufacture, sale, and distribution of conveyor systems and related

products. APA at 1 (Rec. Doc. No. 213-4 at 6). Various provisions in the APA indicate that in

order to set the terms of the sale, the parties undertook significant efforts to account for all of the

existing and potential liabilities of Ermanco. For instance, in the APA, Paragon and Ermanco

make the representation to TGW-Ermanco that beyond litigation then pending, "no event has

occurred or circumstances exists that may give rise to or serve as a basis" for litigation that

"relates to" Ermanco's business. *Id.* § 2.15 (Rec. Doc. No. 213-4 at 14).

The comprehensive disclosures provide the basis upon which, in Section 1.2(c) of the

APA, TGW-Ermanco agrees to assume -- as partial consideration for the assets -- a limited set of

14

Ermanco's obligations and liabilities. *See id.* § 1.2(c) (Rec. Doc. No. 213-4 at 7). As noted above,

that set encompasses only certain current balance sheet liabilities of Ermanco, as well as certain

executory obligations arising under various Ermanco contracts. *See id.* art. 8 (Rec. Doc. No.

213-4 at 40); *see also id.* ex. 8.2 (Rec. Doc. No. 213-4 at 58). TGW-Ermanco thus did not agree

to assume the duties and liabilities in tort of Ermanco. Moreover, Section 1.2(c) makes it clear

that beyond the limited obligations and liabilities that TGW-Ermanco expressly agreed to

assume, it is not to become liable for any other obligation or liability of Ermanco, including

those that would be "imposed upon [TGW-Ermanco] as a successor under applicable [law]." *Id.*

§ 1.2(c) (Rec. Doc. No. 213-4 at 7.) Any such obligation or liability is instead to be "retained"

and absorbed by Ermanco and Paragon. *Id.*

   As Paragon correctly notes, Section 7.2 does delimit Paragon's duty to indemnify

TGW-Ermanco. Section 7.2 requires TGW-Ermanco to bear the "Adverse Consequences . . .

related to [its] operation of the Business following the Closing Date." *Id.* § 7.2 (Rec. Doc. No.

213-4 at 36). But in light of Section 1.2(c), this provision cannot be construed so far as to require

TGW-Ermanco to assume the obligations and liabilities of Ermanco beyond those that it

expressly agreed to assume. Indeed, to do so would be to require TGW-Ermanco to absorb

liability that it did not agree to absorb -- this would be in direct contravention of Section 1.2(c).

   Thus, while the language of Section 7.2 suggests that TGW-Ermanco is to bear some

successor liability beyond the limited "Assumed Liabilities," such an understanding of Section

7.2 "ignores the impetus of the whole of the [APA]" and therefore must be rejected. *Perry*, 611

N.W.2d at 520. Section 7.2's provision that TGW-Ermanco is to be solely responsible for the

"Adverse Consequences . . . related to [its] operation of the Business following the Closing

Date" does not require TGW-Ermanco to absorb successor liability that it did not agree to assume under Section 1.2(c). Instead, it embodies the more limited promise that after the Closing Date, TGW-Ermanco is to be solely responsible for the obligations and liabilities that arise out of its own operation of the conveyor equipment business and that do not flow from its status as a successor corporation. Thus properly understood, Section 7.2 does not encompass Ms. Kirschenbaum's allegation regarding the continuing duty to warn. As noted above, this allegation is premised on the idea that TGW-Ermanco is the successor corporation to Ermanco and that as a result, it has inherited Ermanco's duty to warn with respect to products that Ermanco had originally designed and manufactured. In light of Section 1.2(c) and Section 7.1, it is clear that such a claim is one for which Paragon, and not TGW-Ermanco, is to bear ultimate responsibility and for which Paragon is to indemnify TGW-Ermanco.

Paragon's third and final argument also relates to Ms. Kirschenbuam's allegation regarding the continuing duty to warn. Paragon argues that Section 7.1 should not be read to require it to indemnify TGW-Ermanco for breaching its own duty in tort -- even when such a duty is imposed on TGW-Ermanco solely because it is a successor corporation. Paragon contends that it would be against public policy for an indemnificator to be required to indemnify an indemnitee for its own negligence. According to Paragon, Michigan law embodies this idea in its requirement that a duty to indemnify for an indemnitee's own negligence must be expressly provided for in a contract. Paragon notes that Section 7.1 of the APA does not have such an explicit reference and that accordingly, it is under no obligation to indemnify TGW-Ermanco with respect to the allegation that it breached its continuing duty to warn.

This argument is also unavailing. Indeed, in *Sherman v. DeMaria Building Co., Inc.*, 513

N.W.2d 187 (Mich. Ct. App. 1994), the Michigan Court of Appeals observed that "Michigan courts have discarded the additional rule of construction that indemnity contracts will not be construed to provide indemnification for the indemnitee's own negligence unless such an intent is expressed clearly and unequivocally in the contract." *Id.* at 190 (citing *Vanden Bosch v. Consumers Power Co.*, 230 N.W.2d 271 (Mich. 1975); *Fischbach-Natkin Co. v. Power Process Piping, Inc.*, 403 N.W.2d 569 (Mich. Ct. App. 1987)); *see also Badiee v. Brighton Area Schools*, 695 N.W.2d 521, 532 (Mich. Ct. App. 2005) ("Indemnity clauses need not expressly mention the indemnitee's own acts to provide coverage for them.").

All of the Michigan case law cited by Paragon for the contrary proposition precede this pronouncement, and as such it is questionable whether it remains sound. Moreover, additional research does not indicate that the Michigan Supreme Court has disapproved of this statement or that the Michigan Court of Appeals has otherwise disavowed it. Thus, the fact that Section 7.1 does not expressly provide for the indemnification of TGW-Ermanco for a breach of its own duty does not bar indemnification for the alleged breach of the continuing duty to warn. Under Michigan law, to hold that an indemnificator is liable for an indemnitee's own negligence, a court need only to ascertain that such liability exists based on "other language in the contract, surrounding circumstances, or . . . the purpose sought to be accomplished by the parties." *Fischbach-Natkin Co.*, 403 N.W.2d at 571. The preceding analysis regarding the impetus of the APA and the central significance of Section 1.2(c) provides ample grounds upon which to conclude that the "broad, all-inclusive indemnification language" of Section 7.1 requires Paragon to indemnify TGW-Ermanco for the alleged breach of the continuing duty to warn. *Id.*

Finally, given that Michigan courts do permit indemnification contracts to be interpreted

17

to allow indemnification for the indemnitee's own negligence, it is clear that such contracts are not against public policy. Paragon might have a point in arguing that it may be more desirable, as a matter of policy, to deter the commission of a tort by making indemnification unavailable and thus increasing the costs to an indemnitee of committing such an act. A tort victim might, after all, prefer not being injured in the first instance rather than being made whole after the fact. But the Michigan courts have evidently not espoused that position. As a result, there is nothing that precludes this Court from enforcing Section 7.1 on its own terms and from requiring Paragon to indemnify TGW-Ermanco for the expenses it incurred in defending the allegation that it had breached a continuing duty to warn.

In sum, Paragon has a duty to indemnify TGW-Ermanco for the expenses it incurred in defending the Kirschenbaum claim in all of its respects. First, those expenses are "Adverse Consequences . . . arising from . . . [Ermanco's] operation of the business . . . before the Closing Date." Second, those expenses are "Adverse Consequences . . . arising from . . . [an] Excluded Liability" as that term is defined by the APA. In addition, Paragon is also liable to TGW-Ermanco for the expenses it has incurred in this third-party action. This is because Paragon has a duty to indemnify TGW-Ermanco for "all Adverse Consequences . . . related to . . . the enforcement of indemnification rights" under Section 7.1. TGW-Ermanco's motion for summary judgment must be granted, and Paragon's cross-motion must be denied.

**C. TGW-Ermanco's Claim for Indemnification Against St. Paul**

In its Supplemental and Amended Complaint, TGW-Ermanco named St. Paul as a Third-Party Defendant alongside Paragon. *See* Supp. & Am. Third-Party Compl. para. III (Rec. Doc. No. 49). TGW-Ermanco alleged that under the insurance policy that St. Paul issued to

18

Paragon, St. Paul is "solidarily liable with Paragon" with respect to its claim for indemnification. *Id.* para. 21. St. Paul has now moved for summary judgment on this claim.

### 1. The choice of law

The parties have presumed that Louisiana law is to apply, even though this claim arises out of an insurance policy issued in Pennsylvania by an insurance agent in Pennsylvania to a corporation that has its principal place of business in Pennsylvania. It is clear, however, that the choice-of-law question is one that the Court must resolve as a threshold matter. As noted above, a federal court sitting in diversity must apply the conflict-of-law rules of the forum state, *see Roberts*, 104 F.3d at 786, and the Louisiana Civil Code states that in general, "cases having contacts with states are governed by the law selected in accordance with [the conflict-of-law provisions] of this Code," La. Civ. Code art. 14.

Louisiana conflict-of-law rules that are specific to contracts apply to insurance contracts. *See, e.g.*, *Murden v. Acands, Inc.*, 921 So.2d 165, 168-169 (La. Ct. App. 2005); *Shell Oil Co. v. Hollywood Marine, Inc.*, 701 So.2d 1038, 1041 (La. Ct. App. 1997). Here, the policy issued by St. Paul to Paragon does not appear to contain a choice-of-law provision. Thus, the analysis is confined to identifying the state whose policies would be seriously impaired if its laws were not applied to this dispute. *See* La. Civ. Code art. 3537. In this case, St. Paul is a Minnesota corporation, *see* St. Paul's Ex. A pt. 1 at 1 (Rec. Doc. No. 205-2), and Paragon is a Delaware corporation, *see* APA at 1 (Rec. Doc. No. 213-4 at 6). However, Paragon has its principal place of business in Pennsylvania, *see* St. Paul's Ex. A pt. 1 at 1(Rec. Doc. No. 205-2), and St. Paul acted through its agent in Pennsylvania in issuing the policy, *see id.* In addition, the policy contains various conforming provisions to ensure the policy's consistency with Pennsylvania

law. *See id.* at 13-18. There are no facts indicating that any other state has a greater interest in the interpretation of the insurance policy at issue than Pennsylvania does. Accordingly, the Court concludes that Pennsylvania law applies to the instant dispute. *See Harrison v. R.R. Morrison & Son, Inc.*, 862 So.2d 1065, 1070 (La. Ct. App. 2003) ("Louisiana courts have often interpreted insurance policies according to the law of the state where the policy was issued.").

### 2. TGW-Ermanco as a third-party beneficiary

As a threshold matter, St. Paul argues that TGW-Ermanco has no claim under the policy because it is not a party to the policy. This argument is not sound. The Pennsylvania Supreme Court has adopted Section 302 of the Restatement (Second) of Contracts. *See Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983). Under that section, a third party can bring suit under a contract if it meets a two-part test and thereby qualifies as "an intended third-party beneficiary." *Id.* First, the party must show that "the recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties.'" *Id.* (quoting Restatement (Second) of Contracts § 302(1) (1979)). Second, the party must show that the performance it seeks "must 'satisfy an obligation of the promisee to pay money to the beneficiary' or [that] 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Id.* (quoting Restatement (Second) of Contracts § 302(1)(a)-(b)). The Pennsylvania Supreme Court has characterized the first prong of the inquiry, which looks to the intent of the contracting parties, as one that addresses the standing of the party seeking to assert a claim as a third-party beneficiary. *See Chen v. Chen*, 893 A.2d 87, 94 (Pa. 2006).

Pennsylvania law regards unambiguous contractual language as conclusive evidence of the parties' intent. "It is firmly settled that the intent of the parties to a written contract is

contained in the writing itself. When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." *Mace v. Atl. Refining Mktg. Corp.*, 785 A.2d 491, 496 (Pa. 2001) (internal quotation marks and citations omitted). In support of its claim, TGW-Ermanco points to a passage in the insurance policy stating that St. Paul will "pay covered indemnitee defense expenses assumed under contract that are incurred by or for that indemnitee . . . as if they're amounts [Paragon is] legally required to pay . . . " St. Paul's Ex. A pt. 2 at 87 (Rec. Doc. No. 205-3 at 42). TGW-Ermanco has the correct argument, but it requires more elaboration.

Under the insurance policy issued by St. Paul to Paragon, St. Paul generally does not cover the liability that Paragon incurs under a contract. *See id.* at 86 (Rec. Doc. No. 205-3 at 41). An exception is carved out, however, in the context of indemnification -- where a third party faces liability for "bodily injury . . . sustained by others," and Paragon has "assumed such liability under a covered contract made before the bodily injury . . . happens." *Id.* In such a circumstance, St. Paul may "defend . . . an indemnitee against a claim," but only if a number of conditions are satisfied. *Id.* at 86-87 (Rec. Doc. No. 205-3 at 41-42). If those conditions are not met, St. Paul will not defend the covered indemnitee, but only "pay covered indemnitee defense expenses assumed under contract that are incurred by or for that indemnitee . . . as if they're amounts [Paragon is] legally required to pay . . . ." *Id.* at 87 (Rec. Doc. No. 205-3 at 42).

The linchpin of this indemnity exception is its definition of "covered contract." That term is defined as including "that part of any . . . contract or agreement under which [Paragon] assume[s] the tort liability of another to pay damages for injury or damages." *Id.* at 88. (Rec. Doc. No. 205-3 at 43). The term "tort liability," in turn, is defined as "liability that would be

imposed by law without any contract or agreement." *Id.* Under this definition, it is clear that the APA is a "covered contract" within the meaning of the insurance policy. Indeed, Section 1.2(c) of the APA provides that all obligations and liabilities of Ermanco that TGW-Ermanco does not expressly agree to assume are "retained" and thus absorbed by Paragon. APA § 1.2(c) (Rec. Doc. No. 213-4 at 7). As noted above, TGW-Ermanco did not agree to assume the duties and liabilities of Ermanco in tort – including those that would be imposed on it "as a successor under applicable [law]," *id.* – and as such, they are assumed by Paragon instead. Under the APA, then, Paragon has "assumed the tort liability of another," and the APA is thus a "covered contract" under the insurance policy.

By its plain language, then, the insurance policy indicates that it was the intention of St. Paul and Paragon to have St. Paul confer a benefit on a party that Paragon had agreed to indemnify (such as TGW-Ermanco), in the form of either defending the indemnitee or paying the indemnitee's defense expenses, with respect to a claim asserting the liability in tort of another (such as Ermanco and, in its capacity as the successor corporation, TGW-Ermanco) that Paragon had agreed to assume under a contract into which Paragon had entered before the alleged tort occurred (such as the APA before Ms. Kirschenbaum was injured). Because the insurance policy makes this clear through unambiguous language, it states as a matter of law the intent of the parties. Allowing TGW-Ermanco to bring suit against St. Paul would clearly be "appropriate to effectuate [such an] intention." Restatement (Second) of Contracts § 302(1). The first-prong of the inquiry regarding whether TGW-Ermanco qualifies as an intended third-party beneficiary of the insurance policy is thus satisfied.

The second prong of the intended-beneficiary inquiry is easily satisfied. As noted earlier,

that prong requires a third party seeking to assert a claim under a contract to show that the performance it seeks would "satisfy an obligation of the promisee to pay money to the beneficiary." Restatement (Second) of Contracts § 302(1)(a). Here, St. Paul promised to Paragon that it would "pay covered indemnitee defense expenses assumed under contract that are incurred by or for that indemnitee . . . as if they're amounts [Paragon is] legally required to pay . . . ." St. Paul's Ex. A pt. 2 at 87 (Rec. Doc. No. 205-3 at 42). Plainly, this is "an obligation  . . . to pay money" to the indemnitee.

Thus, TGW-Ermanco has a cause of action against St. Paul as an intended third-party beneficiary of the insurance policy issued by St. Paul to Paragon. And St. Paul is liable to TGW-Ermanco for the "covered indemnitee defense expenses assumed under contract" that TGW-Ermanco incurred in defending the Kirschenbaum claim. This is because, as the analysis above shows, Paragon itself is liable for indemnification with respect to the Kirschenbaum claim.[5] In light of this, it is clear that St. Paul's motion for summary judgment must be denied. In addition, even though TGW-Ermanco has not filed a cross-motion on its claim against St. Paul, the Court concludes *sua sponte* that summary judgment is to be granted to TGW-Ermanco on the issue of liability with respect to this claim. The analysis above indicates that this issue can be

---

[5] The amount for which St. Paul is liable with respect to the defense of the Kirschenbaum claim may be the same amount for which Paragon is liable. The insurance policy defines "indemnitee defense expenses assumed under contract" as "reasonable attorney fees and necessary litigation expenses." *Id.* at 89 (Rec. Doc. No. 205-3 at 44). Similarly, the APA requires Paragon to pay "reasonable attorneys' . . . fees" in addition to other costs of litigation. *See* APA art. 8 (Rec. Doc. No. 213-4 at 40). It should be noted, however, St. Paul is not liable for the expenses incurred by TGW-Ermanco in this third-party action (i.e., its action to enforce its right to indemnification under the APA) -- this does not fall within the indemnification exception to the general exclusion of contractual liability under the policy. *See* Pl.'s Ex. A pt.2 at 86 (Rec. Doc. No. 205-3 at 41).

resolved as a matter of law, and thus summary judgment is appropriate. *See, e.g.*, *U.S. Cellular Corp. v. City of Wichita Falls, Tex.*, 364 F.3d 250, 255 n.6 (5th Cir. 2004) (noting that "a district court may grant summary judgment against a movant even if the non-movant has not filed a cross-motion" (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 730 (5th Cir. 2003); *Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985)); *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2004) (explaining that this practice is consistent with the "objective of Rule 56 to expedite the disposition of cases and . . . with the mandate of Rule 54(c) requiring the court to grant the relief to which a party is entitled 'even if the party has not demanded such relief in the pleadings'").

**D. St. Paul's Motion to Bifurcate Trial**

St. Paul has filed a motion to bifurcate trial, but it did so before Ms. Kirschenbaum entered into a settlement agreement with the defendants in the main demand. In its motion, St. Paul requested that the Court bifurcate the trial of TGW-Ermanco's third-party action from the trial of the main demand. Because Ms. Kirschenbaum's claims in the main demand have all been dismissed, this motion must be denied as moot.

**IV. CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that TGW-Ermanco's Motion for Summary Judgment (Rec. Doc. No. 213) – which reaches only the issue of liability with respect to its claim against Paragon – is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Paragon's Motion for Summary Judgment (Rec. Doc. No. 204) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that St. Paul's Motion for Summary Judgment (Rec. Doc.

No. 205) is hereby **DENIED**.

      **IT IS FURTHER ORDERED** that summary judgment is hereby **GRANTED** in favor of TGW-Ermanco on the issue of liability with respect to its claim against St. Paul.

      **IT IS FURTHER ORDERED** that St. Paul's Motion to Bifurcate Trial (Rec. Doc. No. 206) is hereby **DENIED AS MOOT**.

      New Orleans, Louisiana, this 13th day of October, 2010.

United States District Judge